IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

**JOSE A. ROSARIO RODRIGUEZ,**

   **9783 Upper Mill Loop**
   **Bristow, Virginia 20136**

    *Plaintiff*

v.

**UNITED STATES OF AMERICA**

   **U.S. Attorney for the District of**
   **Maryland, Southern Division**
   **Civil Process Clerk**
   **6406 Ivy Lane**
   **Suite 800**
   **Greenbelt, Maryland 20770**

    *Defendant.*

CASE NO. **8:21-CV-411**

**PLAINTIFF'S ORIGINAL COMPLAINT**

(Federal Tort Claims Act: Medical Malpractice)

TO THE HONORABLE COURT

    Plaintiff, Jose A. Rosario Rodriguez, files this lawsuit against Defendant, United States of America, and would show the Court the following in support thereof:

**Parties**

1.    Plaintiff, Jose A. Rosario Rodriguez, is currently a resident of Virginia and resided in Virginia when the allegations below occurred.

PLAINTIFFS' ORIGINAL COMPLAINT – Page 1

2.     This action is brought against Defendant, United States of America, pursuant to the Federal Claims Tort Act, 28 U.S.C. § 2671, *et seq*., based on the negligent actions of federally employed medical providers working at Walter Reed National Military Medical Center (WRNMMC)[1] in Bethesda, Maryland.

## Jurisdiction and Venue

3.     Pursuant to 28 U.S.C. § 2675(a), Plaintiff properly and timely submitted his claim to the United States Department of the Navy by using a Standard Form 95.  The claim was received by the United States Department of the Navy on February 11, 2019.

4.     On August 28, 2019, the United States Department of the Navy mailed a letter to Defendant wherein it denied the claim in full.

5.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1346(b)(1).

6.     Venue is proper pursuant to 28 U.S.C. § 1402(b) because the acts and omissions complained of occurred at the Walter Reed National Military Medical Center in Bethesda, Maryland, which is located within this judicial district.

## Facts

7.     Plaintiff suffered from plantar wart clusters on his right foot for several years before the date of the incident.  He had no relief from over the counter treatments.  Accordingly, as a military retiree entitled to medical care at military medical treatment facilities, he sought treatment for this condition by medical providers at WRNMMC.

8.     On February 27, 2018 at 7:00 A.M., Plaintiff underwent treatment for the removal of the wart cluster using liquid nitrogen at WRNMMC. Dr. Shevonne K. Wells was Plaintiff's medical provider for this issue, and on the morning of the treatment she met with Plaintiff alongside two

---

[1] WRNMMC is managed by the United States Department of the Navy.

PLAINTIFFS' ORIGINAL COMPLAINT – Page 2

technicians and another unknown female who Dr. Wells stated was "in training." After Dr. Wells discussed the procedure with Plaintiff, she told the person in training to complete the procedure and Dr. Wells left the room.

9. Dr. Wells was not present during any of the procedure, leaving the person in training to conduct the entirety of the procedure with the technicians and without supervision. The person in training was not competent to complete this procedure. She did not know how to use the liquid nitrogen canister, as one of the technicians had to explain to her how to use the tool. Once she began dispensing the liquid nitrogen, the amount she dispersed far exceeded what was medically appropriate. Further, the time she spent dispersing the liquid nitrogen on Plaintiff's foot far exceeded the time noted in the medical records. During the procedure, Plaintiff told the female she was using too much nitrogen and began to scream in pain when the excessive amount of liquid nitrogen used began to severely burn his foot.

10. This pain continued to be excruciating throughout that day and night, leading Plaintiff to go to an emergency room near his home in the early morning of the next day, February 28, 2018. Medical providers at the civilian emergency room contacted WRNMMC for directions on how to treat the Plaintiff. Medical Staff at WRNMMC instructed the civilian emergency room staff expressly not to pop the blister but rather to "offload with felt or moleskin by cutting out a donut." WRNMMC medical staff characterized the blister as "typical" to the civilian emergency room staff.

11. This treatment directed by WRNMMC medical staff did nothing to alleviate the severe pain. After leaving the emergency room, Plaintiff immediately traveled to WRNMMC to follow-up.

PLAINTIFFS' ORIGINAL COMPLAINT – Page 3

12.     At 10:31 A.M. on February 28, 2018, Plaintiff reported to the WRNMMC podiatry clinic, where he reported experiencing a "10/10" in pain.  There, he was unable to bear weight on right foot and was "not well-appearing."  The medical staff at WRNMMC again simply reported that this result was "consistent with expected results of cryotherapy treatment performed in clinic yesterday."  The medical staff did not drain the blister.

13.     On March 2, 2018, Plaintiff again contacted the WRNMMC medical staff and left a voicemail for Dr. Gourdine-Shaw.  In that message, he complained that the blister had continued to grow and that the pain was "intolerable."  After not getting a response, Plaintiff texted Dr. Gourdine-Shaw a picture of the massive blister on the sole of his foot.  Dr. Gourdine-Shaw asked if he could report to WRNMMC, which he declined and instead asked for a local referral.  She agreed and approved a referral to a local provider.  The picture sent to Dr. Gourdine-Shaw was:



PLAINTIFFS' ORIGINAL COMPLAINT – Page 4

14. Later on March 2, 2018, using the referral, Plaintiff saw Dr. Mukesh Bhakta at Prince William Foot & Ankle Center for the first time. Plaintiff presented to Dr. Bhakta complaining of experiencing a "10/10" pain. Dr. Bhakta immediately recognized the serious nature of the blister, it being so remarkable that he called his staff in to observe it as well as videotaping the blister. Dr. Bhakta referred to the blister in his records as a "severe bolus lesion" with "serious drainage underneath," and stating "surrounding tissue has erythema."

15. Dr. Bhakta is a doctor of podiatric medicine, licensed in Virginia, and Board Certified by the American Board of Multiple Specialties in Podiatry and Primary Care in Podiatric Medicine. He has been in private practice since 2000. He began seeing Plaintiff as a patient on March 2, 2018 and has continued to be Plaintiff's treating physician since that date.

16. Dr. Bhakta summarized the initial impression of Plaintiff's foot by stating "[i]n my close to 20 years of practicing podiatry, I have never seen anything similar from post chemocauterization or nitrogen freezing." He also opined, "[t]he blister on his right foot was enormous and had inexplicitly not been drained."

17. Consistent with the medically recognized standard of care, Dr. Bhakta treated Plaintiff by administering a nerve-blocking agent in the ankle, followed by steps to drain the blisters. Dr. Bhakta made multiple slits in Plaintiff's foot to allow appropriate drainage.

18. Dr. Bhakta has opined, based on his experience and medical training, and his knowledge of the history of the case and the patient's presentation, that it is more likely than not that the person who administered the liquid nitrogen breached the standard of care by administering too much freezing agent for too long on Plaintiff's foot.

19. Dr. Bhakta has opined, based on his experience and medical training, and his knowledge of the history of the case and the patient's presentation, that the failure to drain the blister in a

timely fashion was a breach of the standard of care.  Blisters of varying sizes routinely come about from freezing warts.  The standard of care is to drain them if they are painful.

20. Medical providers of WRNMMC were responsible for failing to have Plaintiff's blister drained on at least two occasions.  Plaintiff was seen after the blister reaction at the civilian emergency room and later at WRNMMC, and each time WRNMMC medical staff concluded that the blister should not be drained to improve the complication.  This was a breach of the standard of care.

21. If the area had been drained appropriately within the first day or two after forming, the symptoms would have been less severe.

22. Allowing a large amount of fluid to build up, especially in an area as sensitive as the sole of a foot, can be extremely painful.  Beyond the pain, however, is the fact that severe fluid buildup can cause other, more serious problems.  Similar to compartment syndrome, if even sterile, non-infected fluid builds up, it can cause a large amount of pressure on the surrounding area resulting in nerve damage, blocked blood flow, and death of internal tissue, which is what happened to Plaintiff.

23. Plaintiff has suffered serious injury and residual disability, including great pain and physical suffering, as well as mental suffering, with the need for additional medical treatment since the event and as expected in the future.

24. At the time the treatment was administered, Plaintiff suffered excruciating pain on the sole of his right foot where the liquid nitrogen was improperly utilized in gross excess of what should have been used.  This pain continued to be excruciating throughout that day and night, prompting Plaintiff to go to an emergency room the morning after the procedure.  The extreme pain did not subside in the days after, but rather got worse, until Dr. Bhakta's initial treatment.

25.    In the weeks after the incident, the pain in his foot was so great that Plaintiff needed crutches to ambulate.  After being treated by Dr. Bhakta, the pain had receded to a 3 or 4 out of 10 by March 16, 2018, at which time Plaintiff was able to walk in a surgical shoe but without crutches.  By April 6, 2018, generalized pain had subsided but Plaintiff still had pain while walking.  By July 20, 2018, Plaintiff was still having pain in his foot in the shower and while walking barefoot.  By March 4, 2019, Plaintiff's foot was still very sensitive, causing him to have to walk on the side of his foot, with pain while walking, showering, and standing.

26.    On November 20, 2019, Dr. Bhakta summarized Plaintiff's condition.  In that summary, Dr. Bhakta stated that the pain from the wart removal never went away, that Plaintiff must walk on the side of his foot to prevent putting pressure on the area, as mild pressure to the right plantar foot in the first and second interspace proximal to the metatarsal joint and area of old necrosis and blister causes sharp pains along the first and second intermetatarsal nerve regions, and that brushing of the area causes mild electric sensations over a two-inch area of Plaintiff's foot.  Dr. Bhakta further stated he is unsure if this will ever resolve, which will change Plaintiff's way of life including never again being able to walk barefoot comfortably again.

27.    The existence of pain continues and Plaintiff is likely to have permanent nerve damage.

## Count I

### Negligence – Medical Malpractice for Administering Liquid Nitrogen Improperly

28.    Plaintiff incorporates all the foregoing allegations asserted above as if set forth fully in this Count.

29.    On February 27, 2018, the person in training working for WRNMMC who administered the liquid nitrogen acted negligently by breaching the standard of medical care owed to Plaintiff when she failed to administer the treatment properly.  Specifically, she administered too much

nitrogen for too long a period. This directly caused physical injury to Plaintiff and was the direct and proximate cause of Plaintiff's injuries and damages.

## Count II

### Negligence – Medical Malpractice for Failure to Request Supervision

30. Plaintiff incorporates all the foregoing allegations asserted above as if set forth fully in this Count.

31. On February 27, 2018, the person in training working for WRNMMC who administered the liquid nitrogen acted negligently by breaching the standard of medical care owed to Plaintiff when she failed to request assistance or supervision prior to and during a procedure for which she was not familiar or properly skilled or experienced. This directly caused physical injury to Plaintiff and was the direct and proximate cause of Plaintiff's injuries and damages.

## Count III

### Negligence – Medical Malpractice for Failure to Supervise

32. Plaintiff incorporates all the foregoing allegations asserted above as if set forth fully in this Count.

33. On February 27, 2018, the supervisory medical providers at WRNMMC, including but not limited Dr. Shevonne K. Wells, acted negligently by breaching the standard of medical care owed to Plaintiff when they failed to supervise the person in training properly, leaving the trainee alone to conduct a procedure for which she was not familiar or properly skilled or experienced. This directly caused physical injury to Plaintiff and was the direct and proximate cause of Plaintiff's injuries and damages.

## Count IV

### Negligence – Medical Malpractice for Failure to Drain or Otherwise Properly Treat the Blister that Resulted from the Original Procedure

34. Plaintiffs incorporate all the foregoing allegations.

35. From February 28, 2018 through March 2, 2018, the medical staff at WRNMMC, including but not limited Dr. Shevonne K. Wells, acted negligently by breaching the standard of medical care owed to Plaintiff when they failed to properly treat the severe blistering that occurred after the original procedure, diagnosing the issue as "consistent with expected results" without the need to drain or medicate beyond a moleskin donut and nonsteroidal anti-inflammatory drugs, and ignoring or dismissing: i) the severe pain reported; ii) the severe size of the blistering; iii) Plaintiff's need to report to a civilian emergency room because of the condition; iv) Plaintiff's need to report directly back to WRNMMC after being discharged from the civilian emergency room; and v) his other cries for help.  This directly caused physical injury to Plaintiff and was the direct and proximate cause of Plaintiff's injuries and damages.

36. As a result of the aforementioned negligence, Plaintiff has suffered serious injury and residual disability, including great pain and physical suffering, as well as mental suffering, with the need for additional medical treatment since the malpractice and as expected in the future.

37. At the time the treatment was administered, Plaintiff suffered excruciating pain on the sole of his right foot where the liquid nitrogen was improperly utilized in gross excess of what should have been used.  This pain continued to be excruciating throughout that day and night, prompting Plaintiff to go to a civilian emergency room the morning after the procedure.  The extreme pain did not subside in the days after, but instead worsened, eventually prompting Plaintiff to call and text a WRNMMC medical provider, Dr. Gourdine-Shaw, on March 2, 2018.

38. After receiving a referral from Dr. Gourdine-Shaw to see a local medical provider, Dr. Bhatka, Dr. Bhatka took the necessary immediate action to address Plaintiff's medical condition.

However, by the time Dr. Bhatka was involved, Plaintiff had already suffered irreversible damage to his foot due to the negligent conduct of WRNMMC medical staff.

## Prayer for Relief

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant and award the following relief:

a. Award Plaintiff economic and non-economic damages totaling $830,000;

b. Award Plaintiff interest, costs, and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, or through any other legally applicable means; and

c. Grant such other and further relief as the Court deems just and proper.

Dated: February 18, 2021                                       Respectfully Submitted,

/s/ _____
Patrick J. Hughes
Bar ID #: 21532
Patriots Law Group
of Lyons & Hughes, P.C.
5819 Allentown Road
Suitland, Maryland 20746
Phone: (301) 952-9000
Fax: (240) 699-8108
patrickhughes@patriotslaw.com

Garrett M. Condon*
Condon, Wood & Burkhart, L.L.C.
457 Louisiana Avenue
Baton Rouge, LA 70802
Phone: (225) 372-8877
Fax: (225) 372-4333
gcondon@cwbllc.com

*Attorneys for Plaintiff*

*Pro Hac Vice Application Forthcoming

PLAINTIFFS' ORIGINAL COMPLAINT – Page 10