**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOSE A. ROSARIO RODRIGUEZ, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, )<br><br>Defendant. ) | Civil Action No. 21-cv-0411-LKG<br><br>Dated: September 3, 2025 |

<u>**MEMORANDUM OPINION**</u>

## I.    INTRODUCTION

The Plaintiff, Jose A. Rosario Rodriguez, brings this medical malpractice action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2690 and 1346 (the "FTCA"). ECF No. 21. The Government has filed a motion *in limine* to exclude the testimony of the Plaintiff's medical expert, Dr. Mukesh Bhakta. ECF No. 54. The Government has also filed a motion for summary judgment with regard to the Plaintiff's FTCA claims, pursuant to Fed. R. Civ. P. 56. ECF No. 55.

These motions are fully briefed. ECF Nos. 54, 54-1, 55, 55-1, 56, 57, 60 and 61. No hearing is necessary to resolve the motions. L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court: (1) **GRANTS-in-PART and DENIES-in-PART** the Government's motion *in limine* (ECF No. 54); (2) **GRANTS-in-PART and DENIES-in-PART** the Government's motion for summary judgment (ECF No. 55); (3) **EXCLUDES** the testimony of Dr. Bhakta on compartment syndrome and compartment syndrome-like response; and (4) **ENTERS** judgment summarily in favor of the Government on the Plaintiff's FTCA claims in Counts I, II and III of the amended complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

The Plaintiff brings this medical malpractice action against the United States pursuant to the FTCA, related to medical treatment that he received at Walter Reed in 2018.  *See generally* ECF No. 21.  In the amended complaint, the Plaintiff alleges that the medical staff at Walter Reed were negligent and failed to meet the standard of care during a cryotherapy procedure (the "Cryotherapy Procedure") performed on his right foot, resulting in chronic pain and injuries.  *Id.* As relief, the Plaintiff seeks to recover monetary damages from the Government.  *Id.* at Prayer for Relief.

As background, the Plaintiff is a resident of Virginia and a military retiree.  *Id.* at ¶¶ 1 and 7.  In 2018, he sought medical treatment at Walter Reed for plantar wart clusters on his right foot.  *Id.* at ¶¶ 7-8.  The facts regarding the Plaintiff's medical treatment are largely undisputed and set forth below.

The Plaintiff had suffered from plantar wart clusters on his right foot for several years, before receiving the treatment at issue in this case.  ECF No. 62 at ¶ 1 (Joint Statement of Undisputed Facts).  On February 27, 2018, the Plaintiff went to Walter Reed and he underwent treatment for the removal of plantar warts on his right foot with liquid nitrogen (*i.e.*, "cryotherapy").  *Id.* at ¶ 2; *see also* ECF No. 63-5, Ex. 5 at J.R. 116 (medical record dated February 27, 2018).

The liquid nitrogen was applied by Dr. Areeba Ahmed, who was a third-year surgical resident at Walter Reed at the time.  ECF No. 62 at ¶ 3.  Dr. Shevonne Wells was the attending podiatrist on the day of the Plaintiff's procedure.  *Id.* at ¶ 4.  It is undisputed that Dr. Wells was not in the room when the Cryotherapy Procedure was performed on the Plaintiff's right foot.  *Id.* at ¶ 5.

The Plaintiff alleges that he experienced "excruciating" pain after receiving this medical procedure.  ECF No. 21 at ¶ 10.  And so, on February 28, 2018, the Plaintiff went to a civilian

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint; the parties' joint statement of undisputed material facts; the Government's motion for summary judgment, the memorandum in support thereof; and the Plaintiff's response in opposition thereto.  ECF Nos. 21, 55, 55-1, 57 and 62.

emergency room due to pain in his foot. ECF No. 62 at ¶ 6. The emergency room medical staff did not drain the blister on the Plaintiff's foot. *Id.* at ¶ 7.

After leaving the emergency room on February 28, 2018, the Plaintiff went to the Walter Reed podiatry clinic. *Id.* at ¶ 9. Dr. Wells and Dr. Gourdine-Shaw, who was not present in the room when the Cryotherapy Procedure was performed on the Plaintiff's foot, evaluated the Plaintiff and they decided not to drain the blister on February 28, 2018. *Id.* at ¶¶ 8 and 10. Dr. Wells also wrote a note in Plaintiff's medical record observing that the blistering was "consistent with expected results of cryotherapy treatment performed in clinic yesterday." *Id.* at ¶ 11. The Plaintiff alleges Dr. Wells declined to drain the blister "despite being unaware of how Dr. Ahmed's cryotherapy treatment was employed, and knowing there was a 2.5 centimeter fluid-filled blister, and what she noted for pain as '8-9/10.'" ECF No. 57 at 4; *see also* ECF No. 63-5, Ex. 5 at J.R. 126-27.

On March 2, 2018, the Plaintiff contacted Dr. Gourdine-Shaw at Walter Reed, because the blister on his right foot had grown larger. ECF No. 62 at ¶ 12. Dr. Gourdine-Shaw asked if the Plaintiff could report to Walter Reed, but the Plaintiff requested a local referral. *Id.* at ¶ 13. After being sent a picture of Plaintiff's foot, Dr. Gourdine-Shaw agreed and she approved a referral to a local medical provider. *Id.* at ¶ 14.

Later on March 2, 2018, the Plaintiff saw Dr. Mukesh Bhakta at Prince William Foot & Ankle for the first time. *Id.* at ¶ 15. During this March 2, 2018, visit, Dr. Bhakta drained the blister on the Plaintiff's right foot. *Id.* at ¶ 16.

The Plaintiff alleges that the pain in his right foot was so great that he needed crutches to ambulate. ECF No. 21 at ¶ 25. The Plaintiff also alleges that Dr. Bhakta provided a summary of his condition in 2019, finding that the pain from the wart removal never went away and that the Plaintiff must, among other things, walk on the side of his foot. *Id.* at ¶ 26. And so, the Plaintiff contends that the existence of pain in his right foot continues and he is "likely to have permanent nerve damages."[2] *Id.* at ¶ 27.

---

[2] It is undisputed that the Plaintiff also suffered from chronic lower back pain dating back to 2005. ECF No. 62 at ¶¶ 17-19. It is also undisputed that the Plaintiff had three surgeries on his back prior to the wart treatment at issue in this case and that he was prescribed Gabapentin, Cymbalta and Lyrica. *Id.* at ¶¶ 18-19.

<u>The Plaintiff's FTCA Claims</u>

The Plaintiff asserts the following four claims against the Government in the amended complaint: (1) negligence–medical malpractice for administering liquid nitrogen improperly (Count I); (2) negligence–medical malpractice for failure to request supervision (Count II); (3) negligence–medical malpractice for failure to supervise (Count III); and (4) negligence–medical malpractice for failure to drain or otherwise properly treat the blister that resulted from the original procedure (Count IV). *Id.* at ¶¶ 28-38. In this regard, the Plaintiff alleges that: (1) Walter Reed medical staff negligently applied liquid nitrogen to his plantar warts, in violation of the standard of medical care; (2) a Walter Reed medical resident in training failed to request assistance or supervision, in violation of the standard of medical care, prior to administering liquid nitrogen (*i.e.*, "cryotherapy") on his plantar warts; (3) Walter Reed supervisory medical providers failed to properly supervise the Walter Reed medical resident in training while she applied liquid nitrogen to his plantar warts, in violation of the standard of medical care; and (4) Walter Reed medical staff failed to properly treat the severe blistering and pain that the Plaintiff suffered as a result of the above, in violation of the standard of medical care.[3] *See id.* The Plaintiff also alleges that Walter Reed medical staff failed to meet the standard of care during his medical procedure. *Id.* at ¶¶ 18-19.

With regards to the standard of care, the Plaintiff alleges that the standard of care when a resident treats patients is for any such treatments to be performed under supervision by the attending faculty, particularly when one had never personally performed a certain procedure before. ECF No. 57 at 2; *see also* ECF No. 63-10, Ex. 10 at USA 0281 (Section 1.11, stating, "Residents must be supervised at all times. A member of the attending faculty must be physically present in the area where residents are treating patients in outpatient clinics or the operating room."). The Plaintiff further alleges that the Government breached this standard of care, because Dr. Wells admits that she had no knowledge as to the level of experience Dr. Ahmed had with performing cryotherapy and that Dr. Wells admits she was not present when Dr. Ahmed performed the Cryotherapy Procedure on his foot. ECF No. 57 at 2; *see also* ECF No.

---

[3] On February 11, 2020, the Plaintiff filed an administrative claim with the Department of the Navy (the "Navy") related to his medical treatment at Walter Reed. ECF No. 21 at ¶ 3. The Navy denied the Plaintiff's claim on or about August 28, 2020. *Id.* at ¶ 4.

65-9, Ex. 9 at J.R. 195 (Wells Tr. at 36:1-37:17); ECF No. 65-3, Ex. 3 at J.R. 105 (Rodriguez Tr. at 153:1-4) (Testifying that "Dr. Wells said, 'You got it.' Something like that. 'You got it. You take it. It's on you.' Something like that. And she left.").

In addition, the Plaintiff alleges that the Government breached the standard of care, because Dr. Ahmed was unsure how to use the canister of liquid nitrogen and that she had to ask a technician present in the room what she needed to do. ECF No. 57 at 2-3; *see also* ECF No. 63-14, Ex. 14 at J.R. 441 (Ahmed Tr. at 40:10-18). In this regard, the Plaintiff contends that Dr. Ahmed was supposed to have sprayed the warts on his foot three separate times, for 10 seconds each time. ECF No. 57 at 3; *see also* ECF No. 63-9, Ex. 9 at J.R. 193 (Wells Tr. at 27: 3-7); ECF No. 63-5, Ex. 5 at J.R. 116 (medical record specifying same procedure). But the Plaintiff contends that, when Dr. Ahmed began applying the liquid nitrogen to the wart cluster unsupervised, she was spraying each of the warts in the cluster separately in the fashion described by Dr. Wells. ECF No. 57 at 3.

The Plaintiff further contends that, "given the close proximity of the warts, this repetitive act meant that the same area was receiving the liquid nitrogen every time, having the effect of burning the area by three times more than what Dr. Wells had directed." *Id.* (emphasis removed). And so, the Plaintiff seeks to recover monetary damages from the Government. *Id.* at Prayer for Relief.

### B. Relevant Procedural Background

The Plaintiff commenced this civil action on February 18, 2021, and he amended the complaint on November 2, 2021. ECF. Nos. 1 and 21.

On November 12, 2024, the Government filed a motion *in limine* to exclude the testimony of Dr. Mukesh Bhakta and a memorandum in support thereof. ECF Nos. 54 and 54-1. On November 12, 2024, the Government also filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF No. 55 and 55-1.

On December 10, 2024, the Plaintiff filed responses in opposition to the Government's motions. ECF Nos. 56 and 57. On January 14, 2025, the Government filed reply briefs in support of its motions. ECF Nos. 60 and 61.

On January 14, 2025, the Government filed a joint statement of undisputed facts. ECF No. 62. On January 17, 2025, the Government filed the joint record. ECF No. 63.

The Government's motions having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.  Motions in Limine

Motions *in limine* "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted).  "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence."  *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (citation omitted).  The Court has wide discretion in rulings governing trial, including whether to preclude or admit evidence or to prohibit comment, arguments or questioning.  *See, e.g.*, *Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . [and] must have broad discretion."); *see also United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004) ("The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion.").

Federal Rule of Evidence 702 addresses the admissibility of expert evidence.  Fed. R. Evid. 702.  Under Rule 702, expert testimony may be admissible if (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) is "based on sufficient facts or data"; (3) is "the product of reliable principles and methods"; and (4) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The expert testimony must rest on a reliable foundation and be relevant.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to "the testimony of . . . other experts who are not scientists").  An aspect of relevancy is whether the expert testimony proffered "is sufficiently tied to the facts of the case," *Daubert*, 509 U.S. at 591 (citation omitted), and the expert testimony's proponent must prove its admissibility by a preponderance of evidence.  *Id.* at 592 n.10.

Several factors may be relevant to the determination of reliability, including: (1) whether a theory or technique has been tested, (2) whether it has been subjected to peer review and

publication, (3) the known or potential rate of error, and (4) whether the theory or technique is generally accepted within a relevant scientific community. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). But these factors are "neither definitive nor exhaustive, and some factors may be more pertinent than others depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769, 773 (D. Md. 2002) (citation and internal quotation marks omitted). "For the proffered evidence to be sufficiently reliable, it 'must be derived using scientific or other valid methods' and not based on mere 'belief or speculation.'" *Brasko v. First Nat'l Bank of Pa.*, 700 F. Supp. 3d 354, 365 (D. Md. 2023) (quoting *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011)). And so, the Court's "analysis focuses on experts' methods, not their conclusions, but an expert opinion that relies on 'assumptions which are speculative and are not supported by the record' is inadmissible." *Id.* (quoting *Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994)); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

**B. Fed. R. Civ. P. 56**

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See*

Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Relevant to the pending motion for summary judgment, Maryland courts have long recognized that "expert testimony is required to establish negligence and causation" in medical negligence and malpractice cases. *See Rodriguez v. Clarke*, 400 Md. 39, 71 (2007) (quoting *Meda v. Brown*, 318 Md. 418, 428 (1990)); *see also Holzhauer v. Saks & Co.*, 346 Md. 328, 339 (1997); *Johns Hopkins Hosp. v. Genda*, 255 Md. 616, 623 (1969); *Am. Radiology Servs., LLC v. Reiss*, 470 Md. 555, 561 (2020) (expert testimony is needed to establish a *prima facie* case of medical negligence and malpractice, because the duty owed in a specialized expertise "may not be within the common knowledge of the average layperson juror"); *Frankel v. Deane*, 480 Md. 682, 699 (2022) ("Because of the complex nature of medical malpractice cases . . . [plaintiffs must present expert testimony] to establish breach of the standard of care and causation." (quoting *Stickley v. Chisholm*, 136 Md. Ct. Spec. App. 305, 313 (2001))). And so, "summary judgment is appropriate if the plaintiff fails to come forward with admissible expert testimony on standard of care, breach, and causation." *Frankel*, 480 Md. at 699-700; *see also Brunenkant v. Suburban Hosp. Healthcare Sys., Inc.*, No. 20-CV-00150-LKG, 2024 WL 3936919, at *6 (D. Md. Aug. 26, 2024); *Green v. Obsu*, No. ELH-19-2068, 2022 WL 2971950, at *20 (D. Md. July 27, 2022) ("In a case alleging negligence by a professional, expert testimony is ordinarily required to establish the standard of care, breach of the standard of care, and causation.").

## IV.    ANALYSIS

Pending before the Court are the Government's two motions related to the Plaintiff's FTCA claims in this medical malpractice case.

First, the Government has filed a motion *in limine* to exclude the expert testimony of Dr. Mukesh Bhakta on the following topics, pursuant to Fed. R. Evid. 702: (1) that the Plaintiff suffered from compartment syndrome, or a compartment syndrome-like response; (2) the standard of care for when to drain a blister; and (3) the causal link between the Plaintiff's wart treatment and any long-term nerve pain.  ECF Nos. 54 and 54-1.  The Government argues that Dr. Bhakta's expert testimony on these topics is unreliable and speculative.  *See* ECF No. 54-1.  And so, the Government requests that the Court exclude this testimony at trial.  *Id.* at 12.

In his response in opposition to the Government's motion *in limine*, the Plaintiff counters that the Court should not exclude Dr. Bhakta's testimony on these topics, because Dr, Bhakta has a reliable basis for the conclusions set forth in his expert report.  ECF No. 56 at 6-16.  And so, the Plaintiff requests that the Court deny the Government's motion *in limine*.  *Id.* at 16.

The Government has also moved for summary judgment in its favor with regard to the Plaintiff's four FTCA claims in this case, pursuant to Fed. R. Civ. P. 56, upon the following grounds: (1) the Plaintiff has not identified an expert to testify on the standard of care required for a resident to request supervision before applying liquid nitrogen on a wart, or the standard of care required for a resident to request supervision before applying liquid nitrogen on a wart, to prevail on his negligence–malpractice for failure to request supervision and negligence–medical malpractice for failure to supervise claims set forth in Counts II and III of the amended complaint; (2) the Plaintiff has not identified an expert to testify on the standard of care required for applying liquid nitrogen, breach and causation, to prevail on his negligence–medical malpractice for administering liquid nitrogen improperly claim set forth in Count I of the amended complaint; (3) the Plaintiff cannot prevail on his negligence–medical malpractice failure to drain or otherwise properly treat the blister that resulted from the original procedure claim set forth in Count IV of the amended complaint, because Dr. Bhakta should be precluded from testifying about the standard of care for when to drain a blister, breach and causation; and (4) the undisputed material facts show that the Government is entitled to summary judgment on the Plaintiff's FTCA claims, to the extent that he alleges back injuries.  ECF No. 55 at 5-12.

And so, the Government requests that the Court enter summary judgment in its favor on these claims. *Id.* at 12.

The Plaintiff counters that summary judgment is not warranted on his FTCA claims, because Dr. Bhakta can provide admissible expert testimony to establish the standard of care, breach and causation for these claims. ECF No. 57 at 6-16. And so, the Plaintiff requests that the Court deny the Government's motion for summary judgment. *Id.* at 16.

For the reasons that follow, a careful review of Dr. Bhakta's expert report and deposition testimony shows that his opinion that the Plaintiff suffered from compartment syndrome, or a compartment syndrome-like response, is not reliable. But Dr. Bhakta's expert report and deposition testimony make clear that he can provide reliable expert testimony regarding the standard of care for when to drain a blister and any causal link between the Plaintiff's wart treatment and long-term nerve pain.

The undisputed material facts in this case also show that the Plaintiff has not identified an expert to testify on the standard of care required for a resident to request supervision before applying liquid nitrogen on a wart, or the standard of care required for a resident to request supervision before applying liquid nitrogen on a wart, to prevail on his negligence–malpractice for failure to request supervision and negligence–medical malpractice for failure to supervise claims set forth in Counts II and III of the amended complaint. In addition, the undisputed material facts show that the Plaintiff has not identified an expert to testify on breach and causation, to prevail on his negligence–medical malpractice for administering liquid nitrogen improperly claim set forth in Count I of the amended complaint.

But a careful review of Dr. Bhakta's expert report and deposition testimony shows that Dr. Bhakta can provide expert testimony to support the Plaintiff's negligence–medical malpractice failure to drain or otherwise properly treat the blister that resulted from the original procedure claim set forth in Count IV of the amended complaint. Lastly, the undisputed material facts show that the Government is entitled to summary judgment on the Plaintiff's FTCA claims, to the extent that he alleges back injuries. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Government's motion *in limine* (ECF No. 54); (2) GRANTS-in-PART and DENIES-in-PART the Government's motion for summary judgment (ECF No. 55); (3) EXCLUDES the testimony of Dr. Bhakta on compartment syndrome and compartment

syndrome-like response; and (4) ENTERS judgment summarily in favor of the Government on the Plaintiff's FTCA claims in Counts I, II and III of the amended complaint.

**A. The Court Grants-In-Part And Denies-In-Part The Government's Motion *In Limine***

**1. The Court Excludes The Testimony Of Dr. Bhakta On Compartment Syndrome And Compartment Syndrome-Like Response**

As an initial matter, the Court will exclude the expert testimony of Dr. Bhakta on the topic of compartment syndrome, because this testimony is not reliable.  Pursuant to Federal Rule of Evidence 702, expert testimony may be admissible if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) is "based on sufficient facts or data"; (3) is "the product of reliable principles and methods"; and (4) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.  But, the expert testimony must rest on a reliable foundation and be relevant.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to "the testimony of . . . other experts who are not scientists").

When determining whether the expert testimony at issue in this case is reliable, the Court may consider several factors, including: (1) whether a theory or technique has been tested, (2) whether it has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory or technique is generally accepted within a relevant scientific community.  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).  And so, for the Court to conclude that Dr. Bhakta's expert testimony is reliable here, his testimony "'must be derived using scientific or other valid methods' and not based on mere 'belief or speculation.'" *Brasko v. First Nat'l Bank of Pa.*, 700 F. Supp. 3d 354, 365 (D. Md. 2023) (quoting *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011)).

In this case, the Government argues with persuasion that Dr. Bhakta's expert testimony on compartment syndrome is not reliable.  Dr. Bhakta opined during his deposition testimony that that the Plaintiff developed "compartment syndrome" in his foot, which damaged the sensory nerve.  ECF No. 63-2, Ex. 2 at J.R. 13 (Bhakta Tr. at 37:1-3).  In this regard, Dr. Bhakta opines that this condition was caused by "a severe cold burn," through the application of liquid nitrogen during the Cryotherapy Procedure.  *Id.* at J.R. 31 (Bhakta Tr. at 108:24).

To support of this theory, Dr. Bhakta also testified that:

> Compartment syndrome is when you have trauma. Typically it's in deeper tissue where muscle tissue is where you have trauma to an area and you have excessive bleeding or pressure buildup and it starts decaying the tissue and the nerves. So the viable tissue, muscle tissue, it causes damage to the nerves. It happens after motor vehicle accidents, fractures, ankle sprains. But, you know, this blistering is a form of trauma, too. It's just unusual. So he had so much pressure there was so much pressure inside his foot there and the nerves are pretty close on the bottom of a foot where he was treated and I believe that the blister -- it's not the blister -- if he had a blister for a day, I believe he would be fine, but because he had it for three days and nothing was done, that's the only thing I can think of where he had residual damage since that day since I saw him.

*Id.* at J.R. 13-14 (Bhakta Tr. at 37:8-38:4).  When asked about the timing of onset for this condition, Dr. Bhakta also testified as follows:

> It can happen day one, two, or three and usually you have -- one of the typical symptoms are severe pain and the first thing you have to do is you have to release the pressure.  So usually we have to do an open fasciotomy where you have to open up the tissue and let all the fluid out, the pressure and you have to leave it open so the tissue can regenerate and heal or else the tissue dies. Like, it decays and dies very quickly because it suffocates.

*Id.* at J.R. 14 (Bhakta Tr. at 37:8-39:3).

The Plaintiff argues that Dr. Bhakta's expert opinion that he suffers from compartment syndrome-like response is reliable, because it is supported by literature published by the National Institutes of Health, National Library of Medicine.  ECF No. 56 at 7-8; *see also* ECF No. 63-12, Ex. 12 at J.R. 409-10 ("Complex Regional Pain Syndrome after Cryosurgery of Viral Warts"); ECF No. 63-13, Ex. 13 at J.R. 411-31 ("A Hypothesis for the Cause of Complex Regional Pain Syndrome - Type I (Reflex Sympathetic Dystrophy): Pain Due to Deep- Tissue Microvascular Pathology").  The Court disagrees for several reasons.

First, the evidence before the Court shows that Dr. Bhakta admitted during his deposition that a "compartment-syndrome-like response" is not a medical diagnosis.  ECF No. 63-2, Ex. 2 at J.R. 29 (Bhakta Tr. at 100:19-23).  Dr. Bhakta also testified during his deposition that he could not find any support for a "compartment syndrome-like" diagnosis in the academic literature. *See id.* at J.R. 6 (Bhakta Tr. at 6:24-8:4) (describing searching unsuccessfully in "APMA journals" and "prior cases reported in Podiatry Today").

The Court also observes that, while the Plaintiff contends that Dr. Bhakta's compartment syndrome diagnosis in this case is supported by the medical literature, a careful reading of Dr.

Bhakta's expert report shows that he does not actually rely upon either of the articles cited by the Plaintiff in his expert report.  ECF No. 63-1, Ex. 1 at J.R. 1-3 (Bhakta Report).

The Court also shares the Government's concern that the timing of Dr. Bhakta's compartment syndrome diagnosis is too remote from the date of the Plaintiff's injury to be reliable.  Dr. Bhakta acknowledged during his deposition testimony that the emergency room physician did not recognize a compartment syndrome-like response on the Plaintiff's foot, during the Plaintiff's emergency room visit on February 28, 2018.  ECF No. 63-2, Ex. 2 at J.R. 30-31 (Bhakta Tr. at 104:22-107:21).  Dr. Bhakta also conceded that the first time "compartment syndrome" is ever mentioned in the Plaintiff's medical records is four years after the Cryotherapy Procedure at issue was performed, on May 27, 2022.  *See id.* at J.R. 60 (Bhakta Tr. at 224:7-12).

Dr. Bhakta's deposition testimony also calls into question this belated diagnosis, because he testified that compartment syndrome sets in "day one, two, or three and usually you have – one of the typical symptoms are severe pain and the first thing you have to do is you have to release the pressure.  So usually we have to do an open fasciotomy where you have to open up the tissue and let all the fluid out, the pressure and you have to leave it open so the tissue can regenerate and heal or else the tissue dies."  *See id.* at J.R. 13 (Bhakta Tr. at 37:8-39:2).  Dr. Bhakta also testified that compartment syndrome pain does not first start a year or more after the trauma.  *See id.* at J.R. 14 (Bhakta Tr. at 40:1-7) ("Q.  Does compartment syndrome pain ever come a year later after a trauma?  A.  No, no, no.  If you have actual trauma, it usually sets in right there, but you can have mild symptoms that you may think are normal from it, but typically not a year later.").

Given this testimony, the Court agrees with the Government that Dr. Bhakta's expert testimony neither establishes that compartment syndrome-like is a medical diagnosis, nor reliably shows that the Plaintiff could suffer from that condition here.  And so, the Court will EXCLUDE Dr. Bhakta's expert testimony on compartment syndrome, or compartment syndrome-like response at trial.  *See* Fed. R. Evid. 702.

### 2.  The Court Will Not Exclude Dr Bhakta's Testimony On The Standard Of Care For Draining Blisters

The Court declines, however, to exclude Dr. Bhakta's expert testimony regarding the standard of care for draining a blister.  In its motion in *limine*, the Government asks the Court to

exclude Dr. Bhakta's expert testimony on this topic, because Dr. Bhakta cannot articulate the standard of care for draining a blister, or show that the medical staff at Walter Reed failed to meet the standard of care.  ECF No. 54-1 at 6-10.  For the reasons that follow, the Court declines to exclude this testimony.

In his expert report, Dr. Bhakta states that, "I am certain, however, that the failure to treat Mr. Rosario Rodriguez's very obvious complication did not follow the standard of care. . . . The standard of care is to drain [blisters] if they are painful and fluid has formed."  ECF No. 63-1 at J.R. 2 (Bhakta Report).  During his deposition, Dr. Bhakta also testified that a blister should be drained if they are painful, establishing this factor, *i.e.*, pain, as when the standard of care calls for the draining of a blister.  ECF No. 63-2, Ex. 2 at J.R. 4 (Bhakta Tr. at 11:8-18) (stating, "The Cantharone and the nitrogen -- actually, the body reacts very similarly where it engages in causing a blistering reaction and burning of the tissue and the blister itself actually cuts off the blood supply to much of the wart, but it can be very painful. Like, it can cause severe pain and if that happens, you always have to drain the blister to relieve the pressure or else you get tissue necrosis."); *see also id.* at J.R. 6 (Bhakta Tr. at 9:16-10:3), J.R. 7 (Bhakta Tr. at 12:20-13:5), and J.R. 13 (Bhakta Tr. at 34:10-17) (same, discussing pain as the factor for why the blister required draining).

Given this testimony, the Court is satisfied that Dr. Bhakta can provide reliable testimony on the standard of care for draining a blister.  Dr. Bhakta's expert report and testimony also make clear that he can provide reliable testimony on whether the Government met this standard of care in this case.  ECF No. 63-1 at J.R. 2 (opining that "[a]llowing a large amount of fluid to build up, especially in an area as sensitive as the sole of the foot, can be extremely painful to the patient).  And so, the Court DENIES the Government's motion *in limine* with regards to Dr. Bhakta's testimony related to the standard of care for draining blisters.

### 3.  The Court Will Not Exclude The Testimony Of Dr. Bhakta On Causation

The Court also declines to exclude Dr. Bhakta's expert testimony regarding any causal link between the Plaintiff's wart and his long-term neve pain, because this testimony is not speculative and Dr. Bhakta may rely upon a differential diagnosis to support the Plaintiff's FTCA claims.  The Fourth Circuit has held that a differential diagnosis "is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated."  *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir.

1999) (citing *Baker v. Dalkon Shield Claimants Tr.*, 156 F.3d 248, 252-53 (1st Cir. 1998)).  To be reliable, a differential diagnosis must first "rule in" a plaintiff's proposed cause and then "rule out" alternative causes.  *See Westberry*, 178 F.3d at 263.  "Ruling in" a cause, also known as proving "general causation, 'is established by demonstrating . . . that exposure to a substance can cause a particular disease."  *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 471 (M.D.N.C. 2006) (citation omitted).  To complete a differential diagnosis, an expert must then "rule out" alternative causes, which means opining as to "specific or individual causation," by "demonstrating that a given exposure is the cause of a particular individual's disease."  *Id.* (citation and internal quotations omitted).

In this case, the Plaintiff contends that Dr. Bhakta reached the conclusion that the actions of Walter Reed medical staff caused his chronic foot pain, based upon a differential diagnosis and his own experience treating the Plaintiff.  ECF No. 56 at 13.  While the Government argues that this differential diagnosis is speculative, the Plaintiff has shown that Dr. Bhakta considered the alternative explanations for the Plaintiff's condition and he ruled them out, because the symptoms were "right over the site that had the severe trauma."  *Id.* at 14; *see also* ECF No. 63-2, Ex. 2 at J.R. 18 (Bhakta Tr. at 57:16-17); *id.* at J.R. 16 and 20 (Bhakta Tr. at 49:4-8 and 63:21-64:18) (testifying that the pain in the Plaintiff's right foot was not consistent with sciatica and back pain – the Plaintiff's pain was localized to the ball of the right foot where the unusually large blister had been.).

Given this, the Court is satisfied that Dr. Bhakta's expert testimony on this topic is reliable. *See Westberry*, 178 F.3d at 262.  And so, the Court will not exclude Dr. Bhakta's testimony on causation.

### B.  The Court Grants-in-Part And Denies-in-Part The Government's Motion For Summary Judgment

Turning to the Government's motion for summary judgment, the Court GRANTS-in-PART and DENIES-in-PART this motion for the reasons set forth below.

### 1.  The Government Is Entitled To Summary Judgment On The Plaintiff's FTCA Claims In Counts II And III Of The Amended Complaint

As an initial matter, the Government persuasively argues that it is entitled to summary judgment on the Plaintiff's negligence claims, based upon failure to request supervision and failure to supervise, in Counts II and III of the amended complaint, because the Plaintiff has not identified an expert to testify about the standard of care related to these claims.  Maryland courts

have long recognized that "expert testimony is required to establish negligence and causation" in medical negligence and malpractice cases. *Rodriguez v. Clarke*, 400 Md. 39, 71 (2007) (quoting *Meda v. Brown*, 318 Md. 418, 428 (1990)). And so, "summary judgment is appropriate if the plaintiff fails to come forward with admissible expert testimony on standard of care, breach, and causation." *Frankel v. Deane*, 480 Md. 682, 699-700 (2022); *see also Brunenkant v. Suburban Hosp. Healthcare Sys., Inc.*, No. 20-CV-00150-LKG, 2024 WL 3936919, at *6 (D. Md. Aug. 26, 2024).

In this case, there is no genuine dispute that the Plaintiff has not identified an expert to establish the standard of care standard of care, breach, or causation related to his negligence – medical malpractice for failure to request supervision and negligence–medical malpractice for failure to supervise claims. *See* ECF Nos. 55 and 57. Notably, the Plaintiff has not identified an expert to testify about the standard of care that applies to a resident with regards to requesting supervision before applying liquid nitrogen to a wart, to support his negligence–medical malpractice for failure to request supervision. *See* ECF No. 57 at 6-9.

Nor has the Plaintiff identified an expert to establish the standard of care required for a resident to be supervised when applying liquid nitrogen to a wart, to support his negligence– medical malpractice for failure to request supervision. *See id*. Without such expert testimony, the Plaintiff simply cannot establish the standard of care for these claims, nor can he show that the Government breached the standard of care, or that this breach caused his injuries. *Frankel*, 480 Md. at 699-700; *see also Brunenkant*, 2024 WL 3936919, at *6.

The Plaintiff's argument that Dr. Bhakta has offered expert testimony on the applicable standard of care for these claims is also unsubstantiated. ECF No. 57 at 8-9. A careful review of Dr. Bhakta's expert report and his deposition testimony show that Dr. Bhakta did not offer an opinion on the standard of care required for a resident be supervised by an attending physician when applying liquid nitrogen to a wart. *See* ECF No. 63-1, Ex. 2 at J.R. 61 (Bhakta Tr. at 228:9-17) (testifying in response to the question, "would you expect someone who has never performed cryotherapy before to be supervised by an attending physician," that: "The first few times I would think so. I mean, if you never used it and you're not familiar with it, that's usually the protocol."). Nor does Dr. Bhakta's testimony establish the standard of care in podiatry regarding when an attending must supervise a resident during the application of liquid nitrogen on a wart. *See id.*

Given this, Plaintiff fails to show that he has admissible expert testimony regarding the standard of care, breach and causation, to support his claims for negligence–medical malpractice for failure to request supervision and negligence–medical malpractice for failure to supervise claims in Counts II and III of the amended complaint.  And so, the Court must GRANT the Government's motion for summary judgment on these claims.  Fed. R. Civ. P. 56; *see Frankel*, 480 Md. at 699.

###### 2.  The Government Is Entitled To Summary Judgment On The Plaintiff's Negligence–Medical Malpractice For Administering Liquid Nitrogen Improperly Claim

The Government has also shown that it is entitled to summary judgment on the Plaintiff's negligence–medical malpractice for administering liquid nitrogen improperly claim in Count I of the amended complaint, because the Plaintiff does not have admissible expert testimony to establish a breach of the standard of care for applying liquid nitrogen, or causation.  As discussed above, "summary judgment is appropriate if the plaintiff fails to come forward with admissible expert testimony on standard of care, breach, and causation."  *Frankel*, 480 Md. at 699-700; *see also Brunenkant*, 2024 WL 3936919, at *6.  To prevail on this claim, the Plaintiff must establish the standard of care for administering liquid nitrogen to a wart, breach and causation.

In Count I of the amended complaint, the Plaintiff alleges that Dr. Ahmed was negligent, because she "administered too much [liquid] nitrogen for too long a period," during the Cryotherapy Procedure.  ECF No. 21 at ¶ 29.  Dr. Bhakta also opines in his expert report that: ". . . while I cannot know for certain, I nevertheless believe it to be more likely than not that the person administering the liquid nitrogen violated the standard of care by administering too much for too long on [the Plaintiff's] foot and then not treating the complication that occurred."  ECF No. 63-1 at J.R. 2.  Dr. Bhakta also opines that "I believe it more likely than not that the excessive nature of the blister was caused by a provider being over-aggressive with applying the liquid nitrogen."  *Id.*

During his deposition, Dr. Bhakta also testified as follows about the standard of care for administering liquid nitrogen to a wart:

Q.  What is the standard of care for treating a wart with liquid nitrogen?

A.   Standard of care?  Well, I mean, liquid nitrogen is also purchased over the counter.  It's been over the counter for, more than five years now, but doctors' offices also use it.  They have stronger forms of it.

> So standard of care is every bottle is different and every vendor is
> different. The ones that I have used in the past, you apply the liquid
> nitrogen for 30 seconds over the wart, each wart, and then you come
> back -- typical course is you come back in two weeks. Some doctors
> have you back in three weeks. I have seen dermatologists in my area
> come back every month. So it depends on the physician what the
> follow-up is until the wart is gone.
>
> Q. So if a physician treated a wart cluster by applying liquid nitrogen to
> a wart for 30 seconds to each wart, that would be within the standard
> of care?
>
> A. Whatever the instructions are on that particular nitrogen pack.

ECF No. 63-2, Ex. 2 at J.R. 17 (Bhakta Tr. at 51:1-25). Dr. Bhakta further testified about the

standard of care as follows:

> [S]o some may say 30 seconds. Some may say 40 seconds. Some doctors,
> if they want to be a little aggressive, they'll go more than 30 seconds.
> They'll maybe do 45 seconds, you know. So you can still fudge what the
> directions are.

*Id.* (Bhakta Tr. at 52:4-10). Lastly, Dr. Bhakta testified that more aggressive treatment of

treatment-resistant warts would also fall within the standard of care. *Id.* (Bhakta Tr. at 52:15-

54:3, testifying that he would treat a treatment-resistant wart differently and more aggressively

depending on the person.).

The Court understands Dr. Bhakta's testimony to be that the standard of care for treating

a wart with liquid nitrogen is to follow the instructions on the package. *See id.* But the Court

also understands Dr. Bhakta's expert testimony to be that those instructions can be "fudged" to

administer the liquid nitrogen for more time than stated on the instructions. *Id.* In this regard,

Dr. Bhakta testified that spraying a wart with liquid nitrogen for up to 45 seconds would still fall

within the standard of care. *Id.*

Given this, the Court is satisfied that Dr. Bhakta can provide admissible testimony about

the standard of care for administering liquid nitrogen to a wart. And so, the Court does not agree

with the Government that the Plaintiff lacks admissible expert testimony on the standard of care

for administering liquid nitrogen to a wart.

But, the undisputed material facts show that Dr. Bhakta cannot offer expert testimony to

establish that the Government breached this standard of care in this case, or that such a breach

caused the Plaintiff's injuries. It is undisputed that the Plaintiff's medical records provide that:

the "Application of Liquid Nitrogen spray for 10 seconds X 3 to each wart." ECF No. 63-5, Ex.

5 at J.R. 116 (medical record dated February 27, 2018). Given this, the medical records show that Dr. Ahmed sprayed each wart on the Plaintiff's right foot for a total of 30 seconds, which would fall within the standard of care articulated by Dr. Bhakta. *See id.*; *see also* ECF No. 63-3, Ex. 3 at J.R. 103 (Rodriguez Tr. at 144:11-20; Plaintiff testifying that he believes that Dr. Ahmed did in fact spray each wart for 10 seconds three times.).

To the extent that Dr. Ahmed sprayed the warts on the Plaintiff's foot for more than 30 seconds, this conduct would also fall within the standard of care articulated by Dr. Bhakta. Notably, Dr. Bhakta acknowledged during his deposition testimony that a more aggressive treatment for a wart, including spraying liquid nitrogen for more than 30 seconds on each wart, would fall within the standard of care. *See* ECF No. 63-2, Ex. 2 at J.R. 17 (Bhakta Tr. at 52:4-10). Dr. Bhakta also provided no testimony to establish when it would be too long to spray the liquid nitrogen. *See id.*

The undisputed evidence in this case also shows that the Plaintiff's warts had been resistant to treatment. ECF No. 63-5, Ex. 5 at J.R. 117 (medical record stating that the Plaintiff had "multiple plantar warts on the [right] foot refractory to conservative treatment. Have increased from single lesion to 7 despite cryotherapy and salicylic acid [treatment]."). Given this, and Dr. Bhakta's testimony that a more aggressive treatment of a treatment-resistant wart would also fall within the standard of care, the Court agrees with the Government that Dr. Bhakta is not able to offer expert testimony to show that the Government breached the standard of care for administering liquid nitrogen on the Plaintiff's wart in this case.

For similar reasons, the Plaintiff cannot establish causation for this claim based upon Dr. Bhakta's expert testimony. As the Government correctly observes, Dr. Bhakta acknowledged during his deposition that the failure to drain the Plaintiff's blister after the Cryotherapy Procedure, rather than the procedure itself, caused the Plaintiff's chronic pain. *See* ECF No. 63-2, Ex. 2 at J.R. 14-15 (Bhakta Tr. at 41:24-42:3) ("A. From the post-care, yes. Not the blister. I believe that the liquid nitrogen treatment was fine to do it. I believe that the complications that occurred afterward were the source of his chronic problem."); *id.* at J.R. 23-24 (Bhakta Tr. at 77:24-78:2 ("A. Because I disagreed with his post-care. Not the treatment, but what happened in the subsequent three days with the reaction and complication he had."). Given this testimony, the Plaintiff cannot establish that the Cryotherapy Procedure caused his injuries. And so, the Court also GRANTS the Government's motion for summary

judgment on the Plaintiff's FTCA claim set forth in Count I of the amended complaint.

### 3. Summary Judgment Is Not Warranted On The Plaintiff's Negligence–Medical Malpractice For Failure To Drain Or Otherwise Properly Treat The Blister Claim

The Government's argument that it is entitled to summary judgment on the Plaintiff's negligence–medical malpractice for failure to drain or otherwise properly treat the blister that resulted from the original procedure claim set forth in Count IV of the amended complaint, is less persuasive. The Government seeks summary judgment on this claim upon the ground that the Court should exclude the testimony of Dr. Bhakta on the topic of the standard of care for draining a blister. But, as discussed above, the Court declines to excluded Dr. Bhakta's testimony regarding the standard of care, breach and causation related to the draining a blister.

Given this, the Government has not shown that the Plaintiff will be unable to prevail on this claim at trial. And so, the Court DENIES the Government's motion for summary judgment on this claim.

As a final matter, the Court also observes that the Plaintiff has abandoned any claim that the pain in his right foot exacerbated his pre-existing back pain. *See generally* ECF No. 57. And so, the Government is also entitled to summary judgment in its favor on the Plaintiff's FTCA claims based upon his back pain. Fed. R. Civ. P. 56.

## V. CONCLUSION

In sum, a careful review of Dr. Bhakta's expert report and deposition testimony shows that his opinion that the Plaintiff suffered from compartment syndrome, or a compartment-syndrome like response, is not reliable. But Dr. Bhakta's expert report and deposition testimony make clear that he can provide reliable expert testimony regarding the standard of care for when to drain a blister and a causal link between the Plaintiff's wart treatment and long-term nerve pain.

In addition, the undisputed material facts show that the Plaintiff has not identified an expert to testify on the standard of care required for a resident to request supervision before applying liquid nitrogen on a wart, or the standard of care required for a resident to request supervision before applying liquid nitrogen on a wart, to prevail on his negligence–malpractice for failure to request supervision and negligence–medical malpractice for failure to supervise claims set forth in Counts II and III of the amended complaint. Nor has the Plaintiff identified an expert to testify on breach and causation, to prevail on his negligence–medical malpractice for administering liquid nitrogen improperly claim set forth in Count I of the amended complaint.

But a careful review of Dr. Bhakta's expert report and deposition testimony shows that Dr. Bhakta can provide expert testimony to support the Plaintiff's negligence–medical malpractice failure to drain or otherwise properly treat the blister that resulted from the original procedure claim set forth in Count IV of the amended complaint.  Lastly, the undisputed material facts show that the Government is entitled to summary judgment on the Plaintiff's FTCA claims, to the extent that he alleges back injuries.  *See* ECF No. 55 at 10-12.  And so, the Court:

    (1)    **GRANTS-in-PART and DENIES-in-PART** the Government's motion *in limine* (ECF No. 54);

    (2)    **GRANTS-in-PART and DENIES-in-PART** the Government's motion for summary judgment (ECF No. 55);

    (3)    **EXCLUDES** the testimony of Dr. Bhakta on compartment syndrome and compartment syndrome-like response; and

    (4)    **ENTERS** judgment summarily in favor of the Government on the Plaintiff's FTCA claims in Counts I, II and III of the amended complaint.[4]

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[4] The Court issued an Order consistent with this memorandum opinion on August 28, 2025.  *See* ECF No. 64.